IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-02559-RBJ

UNITED STATES OF AMERICA, and
THE STATE OF COLORADO,

      Plaintiffs,

v.

K.P. KAUFFMAN COMPANY, INC.,

      Defendant.

## ORDER

This matter is before the Court on defendant K.P. Kauffman Company, Inc.'s ("KPK") motion to dismiss. ECF No. 11. For the reasons discussed below, the motion is DENIED.

## I. BACKGROUND

The plaintiffs in this civil lawsuit are the federal Environmental Protection Agency ("EPA") and the Colorado Department of Public Health and Environment, Air Pollution Control Division ("CDPHE").[1] Both entities are acting through the authority of their respective Attorneys General. Plaintiffs allege illegal emissions of volatile organic compounds ("VOCs")

---

[1] The parties refer to Colorado Department of Public Health and Environment, Air Pollution Control Division as CDPHE. The Colorado regulation refers to this entity as the "Division." *See* 5 Colo. Code Regs. § 1001-1:I (2019). According to the regulation, CDPHE acts as staff for Colorado's Air Quality Control Commission ("AQCC"), which oversees Colorado's air quality program pursuant to the Colorado Air Pollution Prevention and Control Act ("APPCA"). *Id.* Because the Division—or CDPHE as I refer to it throughout this order—works as staff for the AQCC, I treat the Division and the Commission as one party and collectively refer to it as CDPHE to avoid any confusion.

1

from KPK's hydrocarbon liquid storage tanks in violation of the following: (1) the federal Clean Air Act ("CAA"), 42 U.S.C. § 7413(b); (2) the Colorado Air Pollution Prevention and Control Act ("APPCA"), Colo. Rev. Stat. § 25-7-101; (3) Colorado's federally approved State Implementation Plan ("SIP"); and (4) Colorado's Air Quality Control Commission Regulation Number 7 ("Regulation 7"). Complaint, ECF No. 1 at ¶¶2–3.

KPK is a privately held company headquartered in Denver, Colorado. *Id.* at ¶13. KPK specializes in hydrocarbon liquid and natural oil and gas production and exploration in the Denver-Julesburg ("D-J") Basin, primarily in the Wattenberg Field in Adams and Weld Counties. *Id.* at ¶¶13–14. KPK owns and operates hundreds of oil and gas facilities in the D-J Basin. *Id.* at ¶14. In 2016, in the D-J Basin alone, KPK produced approximately 272,643 barrels of hydrocarbon liquids and 1.9 billion cubic feet of natural gas. *Id.* at ¶14. KPK stores its hydrocarbon liquids—better known as condensate or crude oil—in storage tanks. *Id.* at ¶3. These tanks are grouped in "tank batteries"; KPK owns and operates 124 such batteries in the D-J Basin that the company has certified as being controlled to comply with the Colorado SIP and Regulation 7's system-wide VOC reduction requirements. *Id.* at ¶¶4, 6.

In September 2016 plaintiffs informed KPK of its noncompliance with the CAA, APPCA, and Regulation 7 by issuing KPK a Compliance Advisory. *Id.* at ¶11. The EPA and CDPHE later filed formal Notices of Violation in March 2018. *Id.* Following the issuance of the Compliance Advisory and later the Notices of Violation, plaintiffs met with KPK several times between September 2016 and October 2018. ECF No. 11 at 5. Then, in October 2018, without issuing a final agency order, plaintiffs filed this lawsuit alleging illegal emissions of VOCs from 41 specific tank batteries owned or operated by KPK.

Plaintiffs developed its factual basis for the complaint following a five-year investigation, spanning from 2013 to 2018. Between September 2013 and April 2015, CDPHE inspectors, using infrared cameras, observed emissions at 18 tank batteries located in the 8-hour Ozone Control Area.[2] *Id.* at ¶58. Then, on December 9, 2015 CDPHE issued a Compliance Advisory to KPK in which it identified violations of Regulation 7 at those same 18 tank batteries. *Id.* at ¶59. The following year, on June 21, June 30, and July 22, 2016, EPA and CDPHE inspectors conducted three joint inspections on 19 KPK tank batteries; those inspections resulted in observed VOC emissions at 12 of the 19 tank batteries. *Id.* at ¶62. In total, between September 13, 2013 and February 22, 2018, federal and state inspectors conducted inspections at 153 of KPK's tank batteries, resulting in observations of VOC emissions 59 times at 41 unique tank batteries. *Id.* at ¶62. These 41 tank batteries are listed by "AIRS ID" and facility name in Appendix A to the complaint. App. A, ECF No. 5. Moreover, in August 2015, EPA requested information from KPK regarding its Vapor Control Systems at KPK's 124 tank batteries. *Id.* at ¶63. Based on KPK's responses to EPA's requests, EPA and CDPHE concluded that KPK's equipment and operations were in violation of federal and state regulations. *Id.* at ¶63.

As a result of KPK's alleged wrongdoing, plaintiffs sued on four counts. Claims one and two are joint federal-state claims asserting violations of Regulation 7, §§ XII.C.1.b and XII.C.1.a, respectively. *Id.* at ¶¶67–78. Claims three and four are CDPHE-only claims for alleged violations of numerous sections of Regulation 7. *Id.* at ¶¶79–90. Shortly after plaintiffs

---

[2] The SIP-approved Regulation 7 sets requirements for VOC emissions for oil and gas operations in the "8-hour Ozone Control Area." This area includes Adams, Arapahoe, Boulder, Douglas, and Jefferson Counties; the Cities and Counties of Denver and Broomfield; and portions of Larimer and Weld Counties. ECF No. 1 at ¶¶44–45.

filed its complaint in October 2018, defendant filed a motion to dismiss. ECF No. 11. Defendant also requested hearing on the motion to dismiss, which I granted. The Court heard oral arguments from all parties at the March 12, 2019 hearing. My legal conclusions are set forth in this order.

## II. STANDARDS OF REVIEW

Defendant argues that the first three claims must be dismissed per Fed. R. Civ. P. 8 and 12(b)(6). ECF No. 11 at 2. Under defendant's theory, once the Court dismisses the federal claims, claims three and four must be dismissed per Rule 12(b)(1). *Id.*

### A. **Rules 8(a)(2) and 12(b)(6).**

Fed. R. Civ. P. 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must set forth a plausible, not merely a possible, claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief

is raised above the speculative level, the plaintiff has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

   B. **Rule 12(b)(1).**

Fed. R. Civ. P. 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). There is a presumption that a cause of action lies outside a federal court's limited jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (quoting *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014)). A motion to dismiss under Rule 12(b)(1) can either: "(1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).

## II. ANALYSIS

   A. **Plaintiffs Have Satisfied the Pleading Requirements.**

Defendant argues that the first three claims must be dismissed because they are based on mere speculation and do not satisfy the pleading requirements. ECF No. 11 at 2. Defendant makes two specific arguments applicable to all three claims. The first is that the "general provisions" of Regulation 7 alleged to be violated in claims one, two, and three do not ban VOC emissions. *Id.* at 7. Rather, Regulation 7 directs owners and operators to simply minimize leakage. *Id.* The second is that defendant alleges that none of the claims are accompanied by specific facts as required by Rule 8. Defendant then addresses each claim individually.

Defendant takes issue with claim one because that claim alleges, among other things, that defendant failed to conduct a "design analysis" on its tank batteries. *See* ECF No. 1 at ¶69. But defendant argues that Regulation 7 does not require a discrete design analysis. ECF No. 11 at 9. Thus, according to defendant, these allegations fail to state a claim under Regulation 7. *Id.* Concerning claim two, defendant takes issue with the specificity of the facts accompanying the claim because plaintiff fails to specify on which tank batteries the violations allegedly occurred. *Id.* at 11. Defendant then argues that the factual allegations supporting claim two are found only in claim two and not in the factual allegations portion of the complaint, which defendant alleges is improper. *Id.* Lastly, defendant argues that plaintiffs improperly shifted the burden to defendant because the complaint alleges that defendant has not fully complied with Regulation 7, such as failing to develop and implement a STEM plan or failing to demonstrate to CDPHE that it practiced good air pollution control. *Id.* at 13–14. I address defendant's arguments in turn.

1. Claim One.

The first claim for relief is a joint claim by the EPA and CDPHE for violations of Regulation 7, § XII.C.1.b. That section states that "[a]ll condensate collection, storage, processing and handling operations, regardless of size, *shall be designed, operated and maintained* so as to *minimize leakage* of volatile organic compounds to the atmosphere to the maximum extent practicable." 5 Colo. Code Regs. § 1001-9:XII.C.1.b (2019) (emphasis added). Specifically, plaintiffs allege that defendant failed to conduct a design analysis to determine if the Vapor Control Systems "at one or more of its tank batteries" have the capacity to route all VOC emissions appropriately to minimize leakage of VOCs to the atmosphere. ECF No. 1 at ¶69. Plaintiffs then allege that defendant's tanks were not designed to minimize leakage of

6

VOCs to the maximum extent possible. *Id.* at ¶70. Finally, plaintiffs allege six specific failures concerning defendant's operation and maintenance of some or all of its tank batteries. *Id.* at ¶71.

After thoroughly reviewing the complaint and relevant Tenth Circuit precedent, it is plain to me that claim one has satisfied the pleading requirements. To start, claim one alleges specific facts such as defendant's failure to conduct a design analysis and its failure to keep and regularly review maintenance records. Even if the claim fails to specify which of the 41 tank batteries are alleged to have failed the standards set forth in Regulation 7, plaintiff has adequately put defendant on notice of the allegations. *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156 (10th Cir. 2018) is instructive here. In *Jani-King*, the Secretary of Labor's complaint alleged that the defendant employer, Jani-King, failed to keep employee records as required by the Fair Labor Standards Act ("FLSA"). *Id.* at 1158. The underlying issue in the case was whether individuals who form corporate entities and enter franchise agreements with the defendant were employees of the defendant for purposes of the FLSA. *Id.* Despite the complaint's omission of any single franchise owner's name or specific allegations concerning any one individual, the Tenth Circuit held that the complaint contained sufficient factual detail to put the defendant on notice of the allegations it faced. The Tenth Circuit stated,

> The Secretary need not plead specific facts with regard to each individual franchise owner where it has made clear (1) the specific act of wrongdoing in which Jani-King allegedly engaged, i.e., violating recordkeeping requirements; and (2) the descriptive identity of those individuals or entities to whom those requirements allegedly apply, i.e., Janitorial Cleaners who personally perform the work and, based on the factual allegations in the complaint, plausibly qualify as FLSA employees due to the economic reality of their relationship with Jani-King.

*Id.* at 1161. Like in *Jani-King*, plaintiffs do not specify the exact tank batteries they allege violated § XII.C.1.b in this claim for relief, but Rule 8, even after *Twombly* and *Iqbal*, does not

7

require as much. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (noting that even after *Twombly*, a plaintiff need not supply specific facts to satisfy Rule 8 so long as the statement gives the defendant notice of the asserted claims and the grounds upon which those claims rest (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007))). Plaintiffs have met their burden here.

Defendant's other issue with claim one—that Regulation 7 does not require a discrete "design analysis"—is at odds with the language of § XII.C.1.b. Section XII.C.1.b requires that all storage and processing operations "shall be designed, operated and maintained" to minimize leakage of VOCs in the atmosphere. Plaintiffs have offered sufficient factual allegations to support this allegation. *See* ECF No. 1 at ¶¶58–66. In these paragraphs, as highlighted above in the background section, plaintiffs detail the evidence that they obtained over a five-year investigation of defendant's facilities including the numerous incidents of observed VOC emissions. Although plaintiffs could have been more specific, Rule 8 does not require that level of specificity at this stage of the proceeding. The complaint contains sufficient factual detail to state a facially plausible claim for relief under Regulation 7, § XII.C.1.b.

2. Claim Two.

The second claim for relief is another joint claim by the EPA and CDPHE for violations of Regulation 7, § XII.C.1.a. That section states that

> [a]ll air pollution control equipment used to demonstrate compliance with this Section XII. shall be operated and maintained consistent with *manufacturer specifications and good engineering and maintenance practices*. The owner or operator shall keep manufacturer specifications on file. In addition, *all such air pollution control equipment shall be adequately designed and sized to achieve the control efficiency rates* required by this Section XII. and to handle reasonably foreseeable fluctuations in emissions of volatile organic compounds. Fluctuations

> in emissions that occur when the separator dumps into the tank are reasonably foreseeable.

5 Colo. Code Regs. § 1001-9:XII.C.1.a. (2019) (emphasis added). The complaint alleges violations of § XII.C.1.a for eight independent reasons. *See* ECF No. 1 at ¶¶76a–f. Again, after reviewing the complaint, I am satisfied that plaintiffs have met their pleading requirements. Plaintiffs allege specific violations such as failure to ensure that the pilot lights on control devices were lit and failing to ensure site glasses of the enclosed combustors were clean. *Id.* at ¶76. Facts such as these, even if plaintiff does not specify which of the 41 tank batteries failed these requirements, puts defendant on sufficient notice to defend itself and prepare for litigation.

Moreover, defendant's other argument pertaining to the placement of facts within the complaint is unpersuasive. Defendant cites no law that requires factual allegations to be contained in one particular section of the complaint. And it's not surprising. The Tenth Circuit has rejected such arguments. In *Stanko v. Davis*, the Tenth Circuit reversed the district court where the district judge dismissed the complaint because the plaintiff did not present his claims in a manageable format. 297 F. App'x 746, 748 (10th Cir. 2008) (unpublished). The court ruled that so long as the complaint adequately affords the defendant notice of the claims, it will comply with Rule 8 even if the format lacks clarity. *Id.* Here, plaintiffs respond to defendant's criticism by alleging that some of the factual allegations supporting claim two were included in the second cause of action rather than the factual background for improved readability. ECF No. 19 at 8. I see no reason to reject plaintiffs' second claim simply because the alleged failures appear in claim two as opposed to the factual background section. As such, defendant's arguments attacking claim two fail.

3. Claim Three.

The third claim for relief is a CDPHE-only claim in which CDPHE alleges violations of multiple sections of Regulation 7, including §§ XVII.B.1.b, XVII.C.2.a, XVII.C.2.b, and XII.D.2.a(x). First, § XVII.B.1.b requires oil and gas facilities and equipment to be "maintained and operated in a manner consistent with good air pollution control practices for minimizing emissions." While I agree with defendant that this section does not outright ban VOC emissions, I find that the facts alleged in the complaint create a reasonable inference that defendant violated certain provisions of Regulation 7. Like plaintiff acknowledges in its motion, ¶¶59, 61, and 62 detail observations of VOC emissions at 41 unique KPK tank batteries over a five-year period. The observations detailed in the complaint make clear that approximately 25% of its inspections resulted in observed emissions. Although the regulation does not quantify what requires adequate air pollution control to properly minimize emissions, whether a 25% hit rate supports an inference of systemic design problems at defendant's facilities or whether defendant operated its tank batteries to minimize leakage is a question of fact which I will not decide at this stage in the proceedings.

Defendant next argues that CDPHE improperly attempted to shift the burden to defendant to prove that it has developed, certified, and implemented a STEM plan as required by XVII.C.2.a. But as CDPHE points out, once emissions from a storage tank are observed by CDPHE, Regulation 7 shifts the burden to the owner or operator to demonstrate that it is complying with the regulation. *See* ECF No. 19 at 11–12. This is a fair reading of the regulation's history, and defendant does not counter CDPHE's reading in its reply. As such, I reject defendant's improper burden shifting argument.

In sum, defendant's Rules 8 and 12(b)(6) arguments are unpersuasive. Accepting the well-pled factual allegations concerning defendant's maintenance, design, and operation of its storage tanks as true and viewed in light most favorable to plaintiffs, I find that plaintiffs have met the pleading requirements of Rule 8(a) and have sufficiently stated claims to withstand a Rule 12(b)(6) motion. Accordingly, defendant's motion to dismiss the first three claims is denied.

Having determined that plaintiffs have satisfied the pleading requirements, defendant's Rule 12(b)(1) argument necessarily fails. However, defendant challenges the third and fourth claims for relief on another ground. I turn to that argument next.

### B. **Plaintiffs Were Not Required to Issue a Final Administrative Order.**

Relying on § 25-7-115 of the APPCA, defendant argues that the third and fourth claims are not ripe for judicial review because CDPHE did not issue a final administrative order prior to filing suit in this Court. ECF No. 11 at 4. In response, CDPHE argues that §§ 25-7-121 and 25-7-122 authorize direct judicial action for injunctive relief and civil penalties without first issuing an administrative order. ECF No. 19 at 14. I agree with CDPHE's interpretation.

Section 115, titled Enforcement, is a lengthy section, but the relevant provisions for this matter are as follows:

- "The division shall enforce compliance with the emission control regulations of the commission [and] the requirements of the state implementation plan . . . pursuant to this article." Colo. Rev. Stat. § 25-7-115(1)(a).

- "If . . . the division itself has cause to believe that, any person is violating or failing to comply with any regulation of the commission issued pursuant to parts 1 to 4 of this article . . . [or a] requirement of the state implementation plan, . . . the division shall cause a prompt investigation to be made; and, if the division investigation determines that any such violation or failure to comply exists, the division shall . . . formally notify[] the owner or operator of such air pollution source after the discovery of the alleged violation

11

or noncompliance. Such notice shall specify the provision alleged to have been violated or not complied with and the facts alleged to constitute the violation or noncompliance." *Id.* § 25-7-115(2).

- "Within thirty calendar days after notice has been given, the division shall confer with the owner or operator of the source to determine whether a violation or noncompliance did or did not occur and, if such violation or noncompliance occurred, whether a noncompliance penalty must be assessed under subsection (5) of this section." *Id.* § 25-7-115(3)(a).

- "If, after any such conference, a violation or noncompliance is determined to have occurred, the division shall issue an order requiring the owner or operator or any other responsible person to comply . . . . Unless enforcement of its order has been stayed . . ., the division may seek enforcement, pursuant to section 25-7-121 or 25-7-122, of the applicable regulation of the commission, order issued pursuant to section 25-7-121 or 25-7-122 of the applicable regulation of the commission, order issued pursuant to section 25-7-118, requirement of the state implementation plan, provision of this article, or terms or conditions of a permit required pursuant to this article in the district court for the district where the affected air pollution source is located. The court shall issue an appropriate order, which may include a schedule for compliance by the owner or operator of the source." *Id.* § 25-7-115(3)(b).

- "The order for compliance shall set forth with specificity the final determination of the division regarding the nature and extent of the violation or noncompliance by the named persons and facilities and shall also include, by reference, a summary of the proceedings at the conference held after the notice of violation and an evaluation of the evidence considered by the division in reaching its final determinations. Any order issued under this subsection (3) which is not reviewed by the commission in accordance with the provisions of subsection (4) of this section shall become final agency action." *Id.* § 25-7-115(3)(c).

- "Within twenty calendar days after receipt of an order issued pursuant to subsection (3) of this section, the recipient thereof may file with the commission a written petition requesting a hearing to determine all or any of the following . . . ." *Id.* § 25-7-115(4)(a)(I).

- "Any orders, payments, sanctions, or other requirements under this section shall be in addition to any other orders, payments, sanctions, or other requirements of this article." *Id.* § 25-7-115(10).

Section 121, titled Injunctions, is briefer that § 115. The relevant provision of § 121 reads as follows:

> In the event any person fails to comply with a final order of the division or the commission that is not subject to stay pending administrative or judicial review or in the event any person violates any emission control regulation of the commission [or] the requirements of the state implementation plan, . . . the division or the commission, as the case may be, may request the district attorney for the district in which the alleged violation occurs or the attorney general to bring, and if so requested it is his or her duty to bring, a suit for an injunction to prevent any further or continued violation.

Colo. Rev. Stat. § 25-7-121(1). The relevant provisions of § 122, which is titled Civil Penalties, states,

> (1) Upon application of the division, penalties as determined under this article may be collected by the division by action instituted in the district court for the district in which is located the air pollution source affected in accordance with the following provisions:
>
> (b) Any person who violates any requirement or prohibition of an applicable emission control regulation of the commission [or] the state implementation plan . . . shall be subject to a civil penalty of not more than fifteen thousand dollars per day for each day of such violation; except that there shall be no civil penalties assessed or collected against persons who violate emission regulations promulgated by the commission for the control of odor until a compliance order issued pursuant to section 25-7-115 and ordering compliance with the odor regulation has been violated.

Colo. Rev. Stat. § 25-7-122(1)(b). With this statutory framework in mind, I now turn to the merits of the parties' arguments.

From the outset, I note that this specific issue appears to be a matter of first impression. Neither party cites any case law nor has the Court located any Colorado cases that have addressed whether CDPHE "shall issue an order" prior to filing a lawsuit under §§ 121 and 122. While the issue of whether § 115 is permissive or mandatory potentially could be a candidate for certification to the Colorado Supreme Court, neither party has made that request. Moreover, I believe the basic canons of statutory construction provide adequate guidance to answer this narrow issue.

"A court's objective in interpreting statutes must be to determine legislative intent, as expressed in the language the enacting body has chosen to use in the statute itself." *Dep't of Transp. v. Gypsum Ranch Co.*, 244 P.3d 127, 131 (Colo. 2010); *see also Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009). To ascertain legislative intent, a court should begin by examining the plain language of the statute, and if the plain language is clear, the statute should be construed as written and the court should enforce the statute according to its terms. *See City of Westminster v. Dogan Const. Co.*, 930 P.2d 585, 590 (Colo. 1997). But if the statute's language is ambiguous, a court may use traditional tools of statutory construction to determine legislative intent. *Gypsum Ranch Co.*, 244 P.3d at 131. While canons are not mandatory rules, "[t]hey are designed to help judges determine the Legislature's intent as embodied in particular statutory language." *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001).

When reading the APPCA as a whole, which I must do, *see State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000), I find that the plain language found in §§ 121 and 122 allows CDPHE to seek injunctions and civil penalties when a person violates an "emissions control regulation of the commission" or a requirement of "the state implementation plan" regardless of whether CDPHE has issued a final order. Colo. Rev. Stat. §§ 25-7-121(1), 25-7-122(1)(b). The legislature explicitly allows for the attorney general to bring a suit for an injunction if a person[3] fails to comply with a final order of the commission *or* if a person violates an emissions regulation or the SIP. Colo. Rev. Stat. § 25-7-121(1). As plaintiffs point out, the use of "or" here indicates

---

[3] The complaint alleges that KPK is a "person" for the purposes of the statutes, and KPK does not object to this assertion.

14

that the legislature intended to provide CDPHE a choice: sue for violating an agency order or sue a person for violating an emission regulation.

Defendant's reading of the statute—that § 115 is a condition precedent to seeking an injunction and civil penalties in court—essentially asks me to read into §§ 121 and 122 an exception or requirement that is not present in the statute. This I cannot do. *See Loughridge v. Goodyear Tire & Rubber Co.*, 207 F. Supp. 2d 1187, 1190 (D. Colo. 2002) ("I cannot create an exception to a statute that the plain language does not suggest or demand." (citing *Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo. 1994))). For one thing, it goes against the plain meaning of §§ 121 and 122. For another, it would render the language of those sections superfluous. Had the legislature intended to require CDPHE to issue a final order before requesting an injunction, the clause in § 121 that allows the commission to seek an injunction in the event any person violates any emission control regulation would be unnecessary if CDPHE could sue a person solely for failing to comply with a final agency order.

Even more telling is § 122, which makes no mention of an agency order. Rather, it gets right to the point: any person who violates an emission regulation or the SIP shall be subject to civil penalties. Colo. Rev. Stat. § 25-7-122(1)(b). The statute makes one exception: "there shall be no civil penalties assessed or collected against persons who violate emission regulations promulgated by the commission for the control of odor until a compliance order issued pursuant to section 25-7-115 and ordering compliance with the odor regulation has been violated." *Id.* Both parties argue that this exception supports their position. Plaintiffs argue that this exception is evidence that, had the legislature intended for CDPHE to issue an order prior to filing suit for all violations and not just odor violations, it would have expressly said so. ECF No. 19 at 17.

Otherwise, as plaintiffs suggest, there would be no need for a special exception pertaining to odor violations. *Id.* Defendant, perhaps making the best argument it can, suggests that all other violations require CDPHE to issue a final order, but the recipient need not violate that order prior to the State filing suit. ECF No. 22 at 5 n.3. I do not agree with defendant's reading of the statute because that would produce an absurd result. *See Nieto*, 993 P.2d at 501 ("Statutory interpretation leading to an absurd result will not be followed."). I cannot believe that the legislature would require CDPHE to issue an order but care not whether the recipient violates that order prior to CDPHE filing suit.

Moreover, § 115 itself provides some insight into the legislature's intent for the use of §§ 121 and 122. First, § 115(1)(a) states that CDPHE shall enforce compliance with the emission control regulations and the SIP "pursuant to this article," meaning the entire APPCA, not just § 115. Colo. Rev. Stat. § 25-7-115(1)(a). This leads me to conclude that §§ 121 and 122 operate independently of § 115. Next, § 115(10) states that any orders or requirements "under this section," meaning § 115, "shall be in addition to" any other orders or requirements "of this article." CDPHE argues that the other orders and requirements of the APPCA include orders from a court authorized by §§ 121 and 122. ECF No. 19 at 18. I agree. The legislature carefully chose its language when referring to a "section" of the APPCA as opposed to the entire "article," again leading me to believe that §§ 115, 121, and 122 work independently of each other.

To me, the Colorado legislature intended to allow the State, through its attorney general, to sue in a court of law without requiring a final order from CDPHE. As a judicial officer, I must give effect to the intent of the legislature. As such, I conclude that plaintiffs were acting within their statutory authority when it brought suit seeking an injunction and civil penalties

notwithstanding the fact that CDPHE did not issue a final agency order prior to filing suit. Accordingly, defendant's motion to dismiss claims three and four on ripeness grounds is denied.

## ORDER

For the reason above, the Court DENIES defendant's motion to dismiss [ECF No. 11].

DATED this day 28th day of June, 2019.

BY THE COURT:

*(signature)*

R. Brooke Jackson
United States District Judge